Duggerics, and I am appointed to represent Mr. Trollope, the appellant in this matter. I'd like to reserve about three minutes for counsel rebuttal. The reason we're here is because this is Mr. Trollope's only opportunity for any meaningful federal review of a state case which is, quite candidly in my experience, somewhat extraordinary, both in terms of the vigor with which Mr. Trollope has attempted to pursue a number of errors that he perceives in this case, and certainly with respect to this record. From my perspective, entering this case 16 years after the fact, this case is confusing and, I would say, disfigured in terms of a procedural history. But there are a few things that are clear from the record. Number one, Mr. Trollope has always maintained his innocence. Number two, he has aggressively, if not obsessively, attempted to press his issues. Number three, he has attempted to have a court hear and resolve his complaints about his lawyer's ineffectiveness, about the inappropriate use of an expert witness at his sentencing, and about what he perceives as the trial judge's bias with respect to him, steadfastly for all these years. Number four, and perhaps most important, Mr. Trollope has never received an evidentiary hearing with respect to any of the issues that he's raised. And the final point I would make with respect to the record, although I think it's probably abundantly clear to this Court already, regardless of whatever sort of procedural default arguments, waiver arguments, and so forth may be made against Mr. Trollope, the record very clearly demonstrates that he never deliberately waived or failed to press any issue, and if there was any shortcoming on his part, it was completely inadvertent. Let me begin by focusing on the questions that this Court raised about two weeks ago concerning a waiver of the procedural default defense by the State. In light of the Court's question, I went back and reexamined the record. A portion of that record I never had, because at the point I was appointed in this case, the entire district court file had already been transferred to the Ninth Circuit, so to a large extent I was relying on what my client was able to provide me and some limited documents from the State. One of the things I did not have was the State's answer with respect to the petition. This is, and I, if you truly want your 20 minutes, which you're entitled to, I'm not going to take this out of your 20 minutes. You were unable to get that, did you ask us if you could have a look at the record that had been transferred to us? I did not, Judge. Oh, okay. But I do have the answer, because the State, when it filed its response to my supplemental opening brief, provided me with its answer, including all of the exhibits, so that is why. So you did see it then, ultimately? Yes. I have seen it at this point, and I went back and I specifically looked at it with respect to this Court's question, and I think, based on my review and the Court's question, I think it would be appropriate to expand the Certificate of Appealability to include that issue of waiver, because, as a practical matter, I think it would be very difficult for the State to argue that it did not waive that defense. The State's answer consists of a number of very clearly delineated sections. In the answer, the State clearly delineates the defenses that it is raising, and procedural default is not among them. I'm looking at page 5 of the State's answer, the first full paragraph, and the issue in Claims 8, 9, and 10 include the issue of newly discovered evidence. The paragraph begins, No claims were preserved in the 8th, 9th, and 10th PCRs. In those actions, Arizona Court of Appeals dismissed as untimely. Then it cited Ilst v. Nunemaker. That sounds like that defense was raised. It could be, Judge. That's what it says to me. I think it's ambiguous, quite frankly, whether the defense is raised or not. In my mind, when it comes to affirmative defenses in the civil context, those are things that are pled with specificity. They're pled specifically. But I can't take issue with you that there is some ambiguity with respect to that question. Well, I'm not arguing that it's ambiguous. To me, it's clear. All right. I'm not speaking for my colleagues, however. Well, let me assume that the State did not technically raise the defense. The second question that the Court asked was, could the district court on its own, sua sponte, raise, assert, and apply that defense? The answer is pretty clearly yes in the Ninth Circuit, and I based that answer on the Vang case, which was decided, I believe, in 2003. But assume that the State did not properly raise the procedural default defense. What the Vang case says, and what some of the other case law says, is that the defense is waived unless it is asserted, but the district court retains discretion to consider the issue if circumstances warrant. Now, I think it's important to note that the State had about four and a half months in this particular case. The petition for habeas was filed in July. The answer wasn't filed until December, so there was plenty of time to look at the record. And if it, if it in fact was waived, the Court must look at a couple of issues. Number one, it must look for the justification as to why the defense was waived. And number two, it must answer a question. As I read cases like Day from the Supreme Court and the Vang case, I found that the administration of justice is better served by dismissing the case on procedural default grounds than by reaching the merits of the petition. In this context, I think it's again important to remember that Mr. Trollope has never had meaningful federal review of the questions he raises. Now I want to spend just a couple of minutes talking to you about some aspects of the record that I do not think are clear in either the State's brief or my brief. And ironically enough, one of the issues is more clear in Mr. Trollope's original petition than it is in any of the briefs that have been filed. And this raises the question. It puts into context the meaning of the procedural default if, in fact, there was one. And I would suggest to you that it actually would establish that there was no procedural default that would apply to any of the issues before this Court. We need to go back to the very first set of petitions for post-conviction relief that Mr. Trollope filed, and we refer to those by the shorthand PCRs. The first series of PCRs was filed almost immediately after he was sentenced. Then one of them was placed on hold, if you will, and a direct appeal was taken. And then the PCR process resumed again. In any event, with respect to that first set of PCRs, the trial court denies those PCRs, dismisses them, and denies all relief on February 28, 1994. Mr. Trollope files a motion for reconsideration on March 21, 1994. And this information can all be found in our excerpts of the record at page 223, which is a portion of the Superior Court docket. By rule, the motion for reconsideration extended any appeal deadline. The trial court struck Mr. Trollope's motion for reconsideration because for a brief period of time, he had court-appointed counsel representing him for purposes of post-conviction relief. The trial court struck that motion for reconsideration on March 30, 1994. Court-appointed counsel files an amended motion for reconsideration. And I will tell the court that this is actually a fairly important document that you have in the record. The State has supplied it at Exhibit R, attached to its answer. In that amended motion for reconsideration, court-appointed counsel raises at least four issues, and he attempts to incorporate by reference the other issues that Mr. Trollope had previously raised. What is not clear from the record is how the court of appeals concludes that the motion for reconsideration, the amended motion on which its review was bound, was limited to the two issues that it sets forth in its decision. But that's what the court of appeals does. It determines that the only issues preserved are the ineffective assistance of counsel and Dr. Gray's role in the trial. And that's Exhibit JJ to the State's answer. That appears to me to be error, but as a matter, as a practical matter, all other issues were essentially terminated by that court of appeals finding at that point, which leads to a big chunk of our procedural default problem today. Now, if I am correct and the court of appeals was incorrect in, for whatever reason, limiting the issues to those two when, in fact, at least four were specifically mentioned and counsel attempted to incorporate others, then I don't think there's a procedural default with respect to that first series of events. The next series of events I think is even, it's more disturbing from a substantive point of view. It's not discussed in the briefs, but it's something that you can see in the record. And it's actually something that Mr. Trollope himself raised in his original petition for habeas and for the Court's reference, I would cite you to that original petition. There is a page, I can't remember if it's the 11th or the 14th page of the document, but it's a page that is labeled 3K is in Kentucky. What happens with respect to that second appeal, which is where the other big chunk of this procedural default, if there was one, occurred, is as follows. There was a ruling by the trial court on November 13th, 1996, and I refer you to the trial court docket, which is in our excerpts of record at page 219. Mr. Trollope, as was his custom, filed a motion for reconsideration, a motion for rehearing with respect to the denial of his relief. That happened, I believe, on December 13th, 1996. Now, under the rules, he had 30 days from the time that the Court denied his relief substantively or from the time that the Court denied his motion for reconsideration rehearing. What happens next is, I think, a serious problem with this case from a procedural point of view. The trial judge, and I guess let me digress for just a moment. You'll recall from the record that Mr. Trollope had moved to disqualify this trial judge back in August of 1994. September 7th of 1994, the trial judge violated Arizona law, violated the rule, which requires that any motion for disqualification be sent out to a neutral, objective, uninvolved judge. The trial judge ruled on the motion to disqualify himself. And basically, he did that by saying that he decided that there was nothing pending before him to be decided. So his thinking must have been that the motion to disqualify really doesn't have any substance. It doesn't matter. Well, now we are two to two-and-a-half years later. In the interim, he has decided a number of matters against Mr. Trollope, never revisiting the issue or the basis for his decision not to disqualify himself, or the decision not to allow another judge to look at the issues that Mr. Trollope had raised. So I'm sorry to digress, but I think it's important to the context. The motion for reconsideration of the denial of this last set of PCRs is pending. Mr. Trollope is waiting for a decision from the court, knowing that he has to appeal as soon as the court denies, or not appeal if the court grants, but assuming the court's going to deny his motion for reconsideration, he has 30 days to appeal. Well, on January 2nd, 1997, the trial judge doesn't deny the motion for reconsideration. He strikes it. He strikes it from the record, and maybe for good reason, maybe not. But the effect of that striking of the motion for reconsideration was that, lo and behold, Mr. Trollope's appeal time had already run. That, of course, plays itself out, because Mr. Trollope, although he files his appeal within a matter of days of receiving that minute entry, the court of appeals decides that the appeal is untimely. Now, the interesting thing in the record to me, I mean, it's all sort of interesting, but Now, just to make sure I'm following the narrative properly, the court of appeals decides the appeal is untimely, and what precisely is it that he's seeking to appeal at that time? I mean, he's had so many appeals, I have trouble keeping them all straight. Yes, sir. I certainly appreciate that. What he is appealing is the last series of his PCR petitions, which include, again, the issues with respect to Dr. Gray and the issues with respect to the ineffective assistance of counsel. I think what the district court is focused on and what probably all the parties have focused on more than anything with respect to that last set is the new evidence relating to the alibi witness, the phone records, and the administrative ruling against Dr. Gray, which actually sanctioned him for his work and his opinions offered at the sentencing in this case. The only thing that the district court, the federal district court held was procedurally barred was the phone records. And can you give me the timeline in terms of when the state trial court decided that, and when the appeal was brought, and what relation, if any, that has to what you call the striking? Yes, sir. The phone records would have been included in the second appeal that I'm discussing now. So, that claim was dismissed, along with others, November 13, 1996. Mr. Trollope filed a motion for reconsideration. The trial court struck his motion for reconsideration, which meant his appeal time had already run and he couldn't appeal. The court of appeals dismissed on the grounds of timeliness. But the interesting thing is, you know, the state never raises in its brief in opposition to Mr. Trollope's appeal the timeliness of his appeal. And I think that speaks to some extent about what the parties understood was going on. I see. But what's the rule in Arizona as to timeliness of an appeal, what a motion to reconsider is? What a motion to reconsider does? Does it stop the time of run from, does it stop the time running for the time in which you must bring an appeal? Well, Judge, the rule right now, and I have not looked specifically at what the rule said December 1996, December 1997. I don't have any reason to believe it's different, but I don't get it. Let's work off the assumption that it's the same. Okay. But the appeal time, the 30 days runs from the time there is a decision on the merits or there is a denial of a motion for reconsideration and rehearing. And what happens if somebody makes a motion to reconsider? Does that mean that it's automatically told until you get a decision? As best I can tell, Your Honor, the rule does not answer that question. It must happen a lot. Well, Judge, I think what doesn't happen a lot is trial judges don't strike motions for reconsideration. If they don't view them as meritorious or for whatever reason are going to reject them, they deny them and give the defendant the opportunity to take his appeal. So you're arguing then somehow that the State rule was applied inconsistently? That this is an irregular procedure that the district judge did, assuming that the State trial judge did? Well, the result certainly is prejudicial, and it's unusual in my experience. Now, I didn't see this argument made in quite this form, but I'm about to make it. Ordinarily, the application of a State procedural rule, such as you've got 30 days in which to do an appeal, bring an appeal, you don't bring the appeal until 60 days, the court says, okay, sorry, you're out of luck. Then when the federal habeas petition is filed and you failed to appeal timely within the State court system, the federal court says, that's procedural default. And there are two ways to get out from under the procedural default. One of them is assume that the State rule was appropriately applied and valid and so on, and that's to have cause and prejudice that excuses your default. But the other one is to say that the State procedural ground relied upon was not independent and adequate. And in the independent and adequate analysis, what you do is, one of the things you do is you figure out, did the State apply this rule with sufficient regularity that it can be applied here to foreclose federal review? Now, I don't see the argument made in your brief on that point. I don't see the argument made, and quite frankly, I had not focused on this aspect of the procedural default until the court's questions a couple of weeks ago. But, you know, and of course, my original position is that we clearly have cause and prejudice here, because although I'm not going to have time to get into it. You'd think in a realistic world that lawyer stupidity would be cause and prejudice. For the most part, it's not. In this case, so pervades every crevice of this case that Mr. Trollope really is entitled to an evidentiary hearing on these issues. Counsel, could I just ask you for one clarification before you conclude? You said the newly discovered evidence was the telephone records. Was there also some reference to a vehicle in the newly discovered evidence claim, a vehicle that matched the description of the subject vehicle? With respect to the particular petition that was dismissed in November of 1996, Your Honor, well, candidly, there is that issue, because there's an affidavit from Mr. Trollope's father that he scoured parking lots and actually came up with not an identical vehicle, but one that was similar enough to Mr. Trollope's vehicle that it would support his theory that it was another person who actually perpetrated these crimes. I can't answer that question. It was clearly one of the claims that Mr. Trollope was pursuing. All right. Thank you. Well, I'm happy to have been proved wrong in terms of how much time we need for this case. You've run over, but we will let you have rebuttal time. We're not going to cut you off. Thank you, Your Honor. May it please the Court, I am Randall Howell, representing respondents in this matter. I, too, will first address this court's order on the question of the default. As you stated, Judge Fletcher, on page 5 of our answer, we clearly state that the newly discovered evidence claim, which comes out of the 8th, 9th, and 10th PCRs, was procedurally defaulted because the Arizona Court of Appeals found it to be, found the position for review to be untimely. Counsel, you didn't say it in so many words. You didn't say it in that way. The difficulty I have with that position is, number one, it's listed under exhaustion of state remedies, not procedural default of state remedies. And, number two, that you're dealing with a pro se litigant, and the word procedural default is never used in terms of asserting this affirmative defense. So I have a question as to whether or not this affirmative defense was adequately stated. What's your response? Our response, first of all, Your Honor, was whatever the particular title that the attorney used in the answer, the point that the attorney was making was that the claim had not been properly exhausted because the Arizona Court of Appeals did find the position for review untimely as to the 8th, 9th, and the 10th PCRs. Counsel, you agree, don't you, that exhaustion and procedural default are two different concepts? They're separate in some ways, Your Honor, and they're related in other ways. A claim may be procedurally defaulted because it's improperly exhausted in state court. That claim can, whatever claim you're dealing with, if it cannot be addressed in state court any further, then it is exhausted. But whether the state could have been more artful and more explicit in making the claim of procedural default it was made at page 5 in the answer. And even if it were not, Your Honor, under Grimberry v. Grier in this court's opinion, and Boyd v. Thompson in a district court can, in its discretion, go on to the court and go on to the state court. And find procedural default. And the important factor there is whether the district court gives the litigant an opportunity to address the procedural default. And once the district court found the claim was defaulted, he moved for recourse to the state court. And he moved for reconsideration of the district court's order. And he claimed as cause for the default that the state trial court had engineered the default by removing the motion for reconsideration from the record. And, of course, that isn't a sufficient cause. But that's the main factor in determining any instance where the state does not raise default, whether a district court can find it on its own. I would like to move on. What I'd like you to move on to, if you could, was the point that shows up fairly late in the last argument, which is, okay, let's assume that the question is properly in front of us as to whether or not there was procedural default by failing to appeal timely after that dismissal. But there's an argument that somehow the timeliness requirement was applied to the district court. And it was applied oddly or unfairly because a motion to reconsider had been made after the trial court made its decision. The trial court then apparently strikes the motion, and apparently we've had we were waiting to bring the appeal until after the action on that motion. And because the motion was struck, once you appeal, it's too late. Could you respond to that? I'm not sure that I was surprised by this argument, so I don't have the appropriate citations visible, but I believe Coleman v. Stewart by this Court says that errors of state law in applying defaults are not cognizable in habeas. Well, they are and they're not. That is, an error of state law by itself doesn't get you anywhere in federal court, because you've got to have a federal claim. But it sometimes turns out to be relevant if what you have is an asserted procedural default in the state court that prevented someone from exhausting. And the argument that the state is making is, well, you didn't exhaust, and you defaulted, and the world is a mess. And the rule that the state court applied to say that you defaulted, in other words, for example, preventing you from appealing, was a regularly applied rule, was not applied in any surprising way, that's just an established and consistently applied state law, you're out of luck. Well, the federal habeas petitioner can respond, well, you tell us that that is a consistent and obvious state rule, but the truth is, that is applied with such irregularity that it cannot be used to appeal. It cannot be used to assert, to bar the assertion of the federal right, so an error of state law can slide over into an argument, well, wait a minute, here's what the state law seems to say on its face, but five times out of ten, they apply it differently. That, then, is something that we look at to see whether the procedural default is valid. You're absolutely right, Your Honor, and you're, the hypothetical that you've just posed highlights a lot of things. Why that doesn't apply in this instance. Okay, tell me why. Sure. In order for a petitioner to claim that a state procedural bar is not applied consistently and regularly, he must do more than just allege and perhaps prove that in his particular instance, the state procedural bar is not applied consistently and regularly. In this instance, the state trial court erroneously applied the bar, as your hypothetical in your discussions with me this morning. If a petitioner could prove that five times out of ten, six times out of ten, that a particular state procedural rule has been applied irregularly, then perhaps he could prove that the state procedural bar is not applied consistently and regularly. We can get out of the state procedural bar that way, but that certainly is not what we have here. At the most, and I stress at the most, what we possibly could have here was an individual error in the application of the finding of a state procedural rule. And I would stress that I am not conceding in any way that the state appellate court erroneously applied the untimeliness bar. Counsel, what's your understanding of the effect of filing a motion for reconsideration? I'm not sure exactly what your, but it is a motion for reconsideration. It used to be that a PCR defendant was required to file a motion for reconsideration as a jurisdictional matter to file a petition for review. That's why in his first set of PCRs that the claims were found precluded under the state procedural rule. I'm sorry, Your Honor, they subsequently changed that ruling. A motion for reconsideration is not required to file a petition for review. But if one is filed, does that stop the time from running in terms of seeking appeal? Yeah, it does, Your Honor. I'm happy to file a notice of supplemental authority on that. The way it normally works in Arizona is that you have the right to file a motion for reconsideration within a shorter time than filing a petition for review. But if you file a motion for reconsideration, although the time is told during the pendency of the motion for reconsideration, your time for filing a petition for review from that denial is much shorter than had you not filed the motion for reconsideration in Arizona. I'm not certain why the motion for reconsideration was struck, and I hesitate to agree, as counsel is arguing, that that was somehow improper. But if the motion for reconsideration was struck, then that would deprive the petitioner of the tolling effect of that motion. I'm not sure why the motion for reconsideration was struck, and I hesitate to agree, as counsel is arguing, that that would deprive the petitioner of the tolling effect of that motion for reconsideration. Is that correct? I simply do not know the answer to that, Your Honor. If there is something wrong with the motion for reconsideration, it's conceivable that the motion for reconsideration would be struck. The time would not be told, but I don't know the answer to that. It is quite clear from the review of the luminous record in this case that the petitioner just flooded the courts at various times and perhaps all times, within a number of pleadings, and if what petitioner filed is not a proper motion for reconsideration, then the court is fully within its rights to strike that. I would have to examine, in fact, why the motion for reconsideration was struck. If the court explained why it was struck, I think it was a cursory ruling on the part of the court without any citation to any rule or any explanation. If that's true, how would that affect your answer? Well, I would have to, but the primary answer, Your Honor, is if the state trial court says that the motion for reconsideration for whatever reason erroneously struck the motion for reconsideration, which caused the appellate court to erroneously apply a time bar, that would, under those hypothetical facts, that would indeed be error of state law. But the fact that it's an error of state law does not mean that the federal court can ignore that finding of a bar under state law. At some point, errors of state law become, rise to the level of depriving a litigant of access to the courts, reasonable access to the courts, which is a violation of due process. Isn't that correct? It would have to rise to the level of due process. And it would seem to be a stretch, Your Honor, if there was a mere error in the trial court striking the motion for reconsideration, for that to rise to the august level. If the court struck it with no reasoning given, just arbitrarily struck the motion for reconsideration without giving any reason, you don't think that would rise to the level of due process violation? Your Honor, the mere striking of a motion for reconsideration, a silent striking, would not necessarily be arbitrary. That's assuming that it's arbitrary. Unfortunately, I did not focus on this issue in preparation for this argument, so I cannot tell you exactly why the trial court struck the motion for reconsideration. I think it's assuming an improper motive at this point to say that the state trial judge's actions were arbitrary, simply because it's silent does not make it arbitrary. So what we have here, Your Honor, is the claims that Petitioner is making, the claims that Petitioner is making, the claims that Petitioner is urging this court to address in its briefing, were not the issues that have been preserved for review to this court. One thing that Cancel argues in his briefs and the argument that he makes here today is that the reason that we have these extensive defaults under state law is that trial counsel, appellate counsel, and PCR counsel were in effect. And under Edwards v. Carpenter from the United States Supreme Court, Petitioner cannot allege ineffective assistance of counsel as cause unless those particular claims of ineffective assistance have been properly raised in federal court. And they have not. I would note also, Your Honor, that if there is a claim of ineffective assistance regarding PCR counsel, because Petitioner had a direct appeal and he had counsel on that direct appeal, he has no right under federal or state law to effective assistance of PCR counsel. My time is very short. I just want to reiterate that the claims that have been raised are not properly before this court, and the claims that could have been raised, the claims that are properly before this court have not been raised. Thank you very much. We'll give you a chance in rebuttal. Let's hear what you have to say. Should I take responsibility for exceeding your expectations on time on this case? This is not your fault. Let's hear what you have to say. It really is a matter of the procedural history, I think, and let me just make a couple of very, very short comments. Number one, with respect to this issue of the trial court striking that motion for reconsideration and therefore making the appeal untimely, I don't really think it makes any difference whether the trial court was silent with respect to its reasoning or was arbitrary or capricious or anything else. Even if the trial court was completely within its right and discretion to strike that motion for reconsideration, I think what the impact is and the due process problem is, is that the pro se plaintiff, in this case, the defendant, had no notice that that was happening, and therefore, by the time he could take any corrective action and preserve his appeal rights, it was too late. Now, wait a minute. I read your brief last night, and I reread your brief this morning, and then I tried to reread a little piece of it right now. I'm having trouble tracking the arguments I'm now hearing and putting them back into the brief. Now, let me kind of go at a couple of things in sequence. One of the arguments that we've been talking about is the possible argument that the state trial judge made a mistake of state law in striking the motion to reconsider, and then somehow ruining the otherwise reasonable available calculation as to what was the timeliness for appeal. And if, in fact, that was a very surprising rule, let's just say there was a very consistent state rule as to how to handle this, and all of a sudden this just comes out of the blue and works to the disadvantage of the of your client, well, that may be not an independent State ground, but I don't see that argument in your brief. Is it in your brief? No, sir, it is not. Did you make that argument to the district court? I have had no involvement in the district court. My client, as I — this is why I pointed it out. My arguments come up based in the context of the Court's questions from about 10 days ago. And the reason I gave you the citations to my client's original petition for habeas is because he did make that argument to the district court. But it's not something that — Make that argument? I mean, which argument? The argument about this motion for reconsideration being stricken and, therefore, his appeal basically being taken away from him as a violation of due process. That's the page 3K cite that I gave you. It's an issue that he raised all along. It's not an issue that I ever saw or focused on until this Court raised this question concerning the procedural default. But it is in the record. It's something my client himself raised. And let me understand, then, the argument that you're now making as to what went wrong there with that timeliness in terms of what the Court of Appeal held was untimely and what the district court held was a procedural borrow. Give me as cleanly as you can your argument as to what's wrong with that. Judge, my argument is — and I'd be more than happy to supplement this. I think it might only be fair to the States. Well, let's talk orally, and then we'll decide what we're going to do. The argument is, if Mr. Howe is correct that the time for appealing was told as a matter of practice, procedure, policy, rule, whatever, while the motion for reconsideration was pending, then my client was denied the benefit of that tolling by having the motion stricken, which retroactively took away the tolling that he expected was taking place. And did you make that argument in your brief? No, sir. Because, again, I don't see it there. No, sir. And what argument do you make in your brief as to what's wrong with the Court of Appeal saying it's untimely and with the district judge in this — on federal habeas saying you're procedurally barred? What is the argument? The brief approached this from only one direction, Judge. The direction was we have cause and prejudice. The ineffective assistance of counsel at trial is the ground, but the ineffective assistance of appellate counsel and PCR counsel, which I think the case law is pretty clear can constitute cause, is the cause in this case. I'm sorry. No, go ahead. But your supplemental brief did incorporate the arguments that were made in the brief that was filed by the petitioner as well. Yes, Your Honor. My client has specifically informed me that I'm not allowed to waive any of the arguments that he has made in his documents. So that is correct. Okay. Let me just summarize by saying that I think under the ruling in Erb-Fiorinowski, where there's been no evidentiary hearing, and particularly with respect to the state's sentencing and Dr. Gray's three or four years later discovered incompetence with respect to the issues and reasons that Mr. Trollope was sentenced to an aggravated sentence, I think it's – I'd be hard-pressed to believe that Mr. Trollope has not alleged colorable claims that can be – that if they can be proven would lead to relief. And for that reason, I think a remand to the district court is appropriate for the appropriate evidentiary hearings. Okay. Thank both sides for their argument. And I have been proven spectacularly wrong. The case of Trollope v. Stewart is now submitted for decision. Thank you for your arguments.
judges: W.fletcher, Rawlinson, Selna